**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ERICKA LAWTON-DAVIS; ANTHONY DAVIS; and ZORIYAH DAVIS,

Plaintiffs,

v. Case No. 6:14-cv-1157-Orl-37DAB

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

---

**ORDER**

This cause is before the Court on the following:

1. Plaintiff's [sic] Amended Motion for Judicial Notice (Doc. 111), filed March 1, 2016.
2. Plaintiff's [sic] Amended Motion to Permit Medical Bill Summary (Doc. 112), filed March 1, 2016;
3. Plaintiffs' Motion for Reconsideration of Order Denying Motion to Strike or, Alternatively, Motion for Leave to Conduct Limited Discovery (Doc. 122), filed March 16, 2016;
4. Defendant's Amended Motion in Limine to Limit the Admission of Evidence (Doc. 110), filed February 29, 2016;
5. Plaintiffs' Response [to] Defendant's Amended Motion in Limine to Limit the Admission of Evidence (Doc. 116), filed March 14, 2016.
6. Plaintiffs' Motion in Limine (Doc. 106), filed February 26, 2016;
7. [Defendant's] Response to Plaintiffs' Motions in Limine (Doc. 117), filed

March 14, 2016; and

8. Defendant's Motion for Reconsideration Regarding Nationwide Records (Doc. 126), filed March 24, 2016.

## BACKGROUND

In the instant action, Plaintiff Ericka Lawton-Davis ("**Mrs. Lawton Davis**") seeks uninsured motorist benefits for injuries she allegedly sustained in a car accident on April 22, 2011 ("**2011 Accident**"). (Doc. 115, p. 1.) A five-day jury trial is set to commence on Monday, April 18, at 9:00 a.m. (*See* Doc. 131.) Pending before the Court are numerous evidentiary issues, which are now ripe for determination.

## PRETRIAL CONFERENCE RULINGS

On March 17, 2016, the Court held a final pretrial conference ("**PTC**"), attended by counsel for both parties ("**Counsel**"). The Court discussed the following motions with Counsel at the PTC.

### I. Unopposed Motions

First, the Court agreed to take judicial notice of United States Life Tables issued by the U.S. Department of Health and Human Services. Pursuant to Federal Rule of Evidence 1006, the Court also agreed to admit Plaintiffs' proffered medical bill summary into evidence, along with the respective underlying medical bills. Finally, upon Defendant's concession, the Court precluded Defendant from eliciting expert testimony, contained in its supplemental expert reports, as to the late-disclosed claims file from Nationwide Mutual Insurance Company ("**Nationwide**"). In light of the foregoing, the following motions are due to be granted: (1) Plaintiffs' Amended Motion for Judicial Notice (Doc. 111); (2) Plaintiffs' Amended Motion to Permit Medical Bill Summary (Doc. 112);

and (3) Plaintiffs' Motion for Reconsideration of Order Denying Motion to Strike (Doc. 122).

## II.   Boilerplate Motions

As the Court forewarned, the following boilerplate motions in the parties' omnibus motions in limine are due to be denied as frivolous: (1) the requests numbered 1–15 in Plaintiffs' Motions in Limine (Doc. 106); and (2) the requests numbered 1–13 in Defendant's Motion in Limine to Limit Evidence, Testimony, and Argument (Doc. 110, pp. 9–13). Counsel are advised that, in the future, the Court will sanction any non-case specific, boilerplate motions in limine as frivolous filings.

## III.   Collateral Sources/PIP Evidence

Upon agreement by the parties, and consistent with the Court's oral pronouncement at the PTC, documentation of personal injury protection payments will be admitted into evidence at trial. After trial, the Court will rule on any applicable setoff from collateral source payments.

## IV.   Evidence of Mrs. Lawton-Davis's Injuries.

In line with the Court's discussion with Counsel at the PTC, the requests numbered 16–18 in Plaintiffs' omnibus Motion in Limine (Doc. 106, pp. 7–8) are due to be denied without prejudice. However, Plaintiffs' counsel are not precluded from objecting to such evidence at trial.

## V.   Dr. Rundell & Dr. Masson

As announced at the PTC, until trial, the Court reserves ruling on the parties' respective challenges to the testimony of Dr. Rundell and Dr. Masson.

**EVIDENCE RELATING TO REASONABLENESS OF MEDICAL BILLS**

The Court has also considered Plaintiffs' motion in limine as it relates to Defendant's expressed intention to offer evidence of differential pricing and prevailing market rates to contest the reasonableness of the medical expenses incurred by Mrs. Lawton-Davis. At the PTC, Defendant represented that it intends to introduce this evidence through cross-examination of Plaintiffs' witnesses and direct expert testimony, without reference to collateral sources or other matters that would run afoul of Florida Statute § 768.76.

As noted by Defendant, several factors are relevant to the analysis of whether a medical provider's charges are reasonable, including—but not limited to—(1) the provider's internal cost structure; (2) the usual and customary rates charged and payments received for these services; and (3) what other similar medical providers in the relevant market charge for similar services. *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1274 (S.D. Fla. 2006).[1]

Equally relevant, of course, would be explanations for pricing differentials,

---

[1] In the context of discovery disputes, courts frequently recognize the relevance of evidence concerning medical charges. *E.g.*, *Gulfcoast Surgery Ctr., Inc. v. Fisher*, 107 So. 3d 493 (Fla. 2d DCA 2013) (holding that discovery requests related to a hospital's internal cost structure were relevant to the tortfeasor's defense as to the unreasonableness of the plaintiff's medical charges); *Columbia Hosp. (Palm Beaches) Ltd. P'ship v. Hasson*, 33 So. 3d 148 (Fla. 4th DCA 2010) (affirming the trial court's conclusion that information about the amounts a hospital charged to patients with and without insurance, those with letters of protection, and the differential billing for litigation and non-litigation patients was reasonably calculated to lead to the discovery of admissible evidence); *Giacalone v. Helen Ellis Mem'l Hosp. Found.*, 8 So. 3d 1232 (Fla. 2d DCA 2009) (concluding that defendant's discovery requests for the hospital's charges, the discounts it grants to various categories of patients it services, and the hospital's internal cost structure were either directly relevant to the reasonableness of the hospital's charges or reasonably calculated to lead to the discovery of admissible evidence).

including, but not limited to: (1) discounts associated with Medicare or Medicaid billing restrictions; (2) discounts associated with insurance contracts; (3) agreements on pricing ceilings; (4) discounts associated with factoring of accounts receivable; or (4) any other evidence that might be fairly considered on the issue of reasonableness of the charges incurred. Mrs. Lawton-Davis's lack of control as to the amount of the charges submitted by the providers is also relevant to the analysis.

Nonetheless, neither market analysis, nor any of the other factors, can be solely relied on as the measure of reasonableness.[2] Therefore, at the commencement of trial, the parties must submit a joint jury instruction in connection with the factors to be considered in assessing the reasonableness of Mrs. Lawton-Davis's medical bills.

Due to the Court's concern that the trial may be improperly sidetracked by the parties' protracted effort to litigate the issue of medical expenses—as well as the billing and referral practices of the involved providers—Counsel are forewarned that cumulative testimony will not be permitted. Additionally, the Court will give a limiting instruction to the effect that: (1) the jury may consider such evidence only to assess the reasonableness of the medical expenses incurred and for no other purpose; (2) any evidence or inference that Mrs. Lawton-Davis received reimbursement or compensation from any collateral

---

[2] *See, e.g.*, *Colomar*, 461 F.Supp.2d at 1270, 1271 (stating that "a market analysis is not the sole measure of evaluating reasonableness," but rather is "only one of several nonexclusive means of showing that hospital charges are unreasonable"); *Giacalone*, 8 So. 3d at 1236 ("The use of comparative market pricing is only one type of relevant information which may be helpful in establishing a claim of unreasonable pricing."); *see also Goble v. Frohman*, 848 So. 2d 406 (Fla. 2d DCA 2003), *approved by* 901 So. 2d 830 (Fla. 2005) (warning that "evidence of contractual discounts received by managed care providers is insufficient, standing alone, to prove that nondiscounted medical bills were unreasonable"); *Hillsborough Cnty. Hosp. Auth.*, 664 So. 2d 1071 (Fla. 2d DCA 1995) ("[E]vidence of these contractual discounts, standing alone, is insufficient to prove that [a hospital's] charges were unreasonable.")

source must not be considered in connection with any damage award the jury deems supported by the evidence; and (3) the jury should not reduce any monetary award in favor of Mrs. Lawton-Davis due to collateral source payments made on her behalf or discounts obtained by the providers. Pursuant to *Goble v. Frohman*, 901 So. 2d 830, 833 (Fla. 2005), after trial, the Court will reduce any amounts paid by collateral sources or discounted as a result of a contract for which no right of subrogation or reimbursement exists.

Finally, the Court will exercise its authority under Federal Rule of Evidence 611 to avoid wasting time and to protect witnesses from undue harassment. As such, Counsel is forewarned that this mine-run uninsured motorist claim will not be used as a forum for protracted litigation of collateral and marginally relevant issues associated with the reasonableness of Mrs. Lawton-Davis's medical expenses.

**DEFENDANT'S MOTION FOR RECONSIDERATION REGARDING NATIONWIDE'S RECORDS**

In addition to the 2011 Accident, Mrs. Lawton-Davis also sustained injuries in a 2004 automobile accident ("**2004 Accident**") (*see* Doc. 107, p. 5), for which she submitted a claim to Nationwide (*see id.* at 2). On April 29, 2015, during discovery in the instant action, Defendant subpoenaed Nationwide ("**April Subpoena**") to obtain its claim file for the 2004 Accident ("**Nationwide File**"). (Doc. 126, p. 1.) That same day, Defendant served Plaintiffs with notice of the April Subpoena, which required submission of the Nationwide File to Defendant on or before May 29, 2015. (*Id.*) Notwithstanding this deadline, Nationwide did not produce any records in response to the April Subpoena. (*Id.* at 2.) Nonetheless, in September 2015, Plaintiffs served Defendant with a request for copies of the Nationwide File. (*Id.* at 1–2.)

Defendant did not contact Nationwide until October 2015 to discuss its noncompliance with the April Subpoena. (*Id.* at 2.) According to Defendant, the Nationwide representative could not locate the April Subpoena and requested a new one. (*Id.*) Consequently, Defendant served Nationwide and Plaintiffs with an amended subpoena in October 2015 ("**October Subpoena**"), which required production of the Nationwide File on or before October 30, 2015. (*Id.*) Defendant finally received the Nationwide File on November 4, 2015. (*Id.*)

On November 6, 2016—the discovery deadline—Defendant attempted to e-mail Plaintiffs the Nationwide File; however, the email "bounced back" because it was too large. (*Id.*) Later that day, Defendant sent Plaintiffs another email with a purported Dropbox link to the Nationwide File. (*Id.*) However, the Dropbox link did not contain the Nationwide File ("**Faulty Link**"). (*Id.* at 3.) Defendant maintains that it did not become aware of the Faulty Link until November 23, 2015, after reviewing Plaintiffs' response to a *Daubert* Motion. (*Id.* (citing Doc. 67, p. 4).) Defendant subsequently e-mailed Plaintiffs an updated Dropbox link containing the complete Nationwide File. (Doc. 126, p. 3.)

Based on the foregoing, and by agreement of the parties at the PTC, the Court precluded Defendant from eliciting expert testimony at trial concerning the matters disclosed in supplemental expert reports prepared after Defendant obtained the Nationwide File. At the PTC, the Court also limited admission of the Nationwide File at trial to impeachment purposes only ("**Limitation Ruling**"). Defendant now moves for reconsideration of the Court's Limitation Ruling.

In support of its Motion, Defendant asserts that: (1) it was only obligated to provide Plaintiffs with a copy of the Nationwide File obtained in response to the April Subpoena,

and not the October Subpoena; (2) even though it was not obligated to provide the Nationwide File to Plaintiffs, it attempted to do so twice on November 6, 2015, just two days after receiving it; (3) any remaining prejudice to Plaintiffs resulted from their failure promptly notify Defendant of problems with the Faulty Link; (4) the exhibits to Defendant's *Daubert* Motion (Doc. 62), which it filed on the discovery deadline, contained the most significant portions of the Nationwide File; and (5) pursuant to Federal Rule of Civil Procedure 26(e)(A), it was not required to supplement its discovery disclosures after obtaining the Nationwide File because Plaintiffs had prior knowledge of the contents of the Nationwide File.

    Rule 26(e)(A) provides that:

> a party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

"If a party fails to provide information . . . as requested by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure is substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

    As an initial matter, this dispute stems from a lack of diligence on both sides. The Court also finds Defendant's distinction between Plaintiffs' request for copies of the Nationwide File sought in the April Subpoena and their failure to request the *same* file sought in the October Subpoena to be disingenuous gamesmanship.

    Nonetheless, the issue at hand boils down to the question of prejudice. Importantly, Defendant represents that the Nationwide File "is the only known record in existence of Mrs. Lawton-Davis's significant medical treatment after her [2004 Accident]." (Doc. 126,

p. 3.) It is unmistakable that Plaintiffs had superior access to Mrs. Lawton-Davis's own medical records—the most significant contents of the Nationwide File. Notwithstanding Plaintiffs' representation at the PTC that the medical records contained in the Nationwide File were too remote in time to obtain from Mrs. Lawton-Davis's treating providers, nothing precluded Plaintiffs from acquiring such records from other sources, as Defendant did. Indeed, such acquisition is standard practice in a case where causation is at issue. Consequently, Plaintiffs cannot now claim that they were prejudiced by the late disclosure of her own medical records by a third party. Based on the foregoing, the Court finds that Defendant's Motion is due to be granted. As such, Defendant will be permitted to offer the Nationwide File at trial for all purposes consistent with the Federal Rules of Evidence and the Court's rulings.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's [sic] Amended Motion for Judicial Notice (Doc. 111) is **GRANTED.**
2. Plaintiff's [sic] Amended Motion to Permit Medical Bill Summary (Doc. 112) is **GRANTED**.
3. Plaintiffs' Motion for Reconsideration of Order Denying Motion to Strike or, Alternatively, Motion for Leave to Conduct Limited Discovery (Doc. 122) is **GRANTED**.
4. Defendant's Amended Motion in Limine to Limit the Admission of Evidence (Doc. 110) is **DENIED IN PART.**
   a. The Court **DEFERS** ruling on Defendant's request to further limit the testimony of defense expert Dr. Robert Masson (Doc. 110, pp. 3–9)

    until the time of trial. Pending such ruling, the parties shall not reference Dr. Masson's testimony.

  b. In all other respects, the Motion is **DENIED**.

5. Plaintiffs' Motion in Limine (Doc. 106) is **DENIED IN PART**.

  a. The Court **DEFERS** ruling on Plaintiffs' request to further limit the testimony of defense expert Dr. Steven Rundell (Doc. 106, pp. 9–10) until the time of trial. Pending such ruling, the parties shall not reference Dr. Rundell's testimony.

  b. The Court will admit evidence of personal injury protection payments at trial. The Court will rule on any applicable setoff from collateral source payments after trial.

  c. In all other respects, the Motion is **DENIED**.

6. At or before the commencement of trial, the parties are **DIRECTED** to submit a jointly proposed jury instruction regarding the non-exclusive factors pertinent to assessing the reasonableness of the contested medical expenses.

7. Defendant's Motion for Reconsideration Regarding Nationwide Records (Doc. 126) is **GRANTED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 7, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record